UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEFFEREY JANNARONE,

        Plaintiff,

        v.

SUNPOWER CORPORATION,

        Defendant.

Civil Action No. 18-9612 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Sunpower Corp.'s ("Defendant")
Motion to Dismiss (ECF No. 21) Plaintiff Jefferey Jannarone's ("Plaintiff") Amended Complaint
(ECF No. 18). Plaintiff opposed (ECF No. 27), and Defendant replied (ECF No. 29). The Court
has carefully considered the parties' submissions and decides the matter without oral argument
pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss
is granted in part and denied in part.

## I. Background[1]

In March of 2006, Plaintiff entered into a contract (the "Contract") with non-party
GeoGenix for the installation of Defendant's solar electric system (the "System") on Plaintiff's
home. (Am. Compl., Ex. A ("Contract") 1, ECF No. 18-1.) Defendant, however, was not a party
named in the Contract. (*Id.*) In May of 2018, Plaintiff's initial complaint was removed from New

---

[1] For the purpose of the instant motion, the Court accepts as true all factual allegations in the
Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Jersey, Law Division, Monmouth County to the District Court of New Jersey. (Notice of Removal, Ex. 1, ECF No. 1-1.) Defendant filed a motion to dismiss which was granted by the Court without prejudice. (First Mot. to Dismiss, ECF No. 6; Order Granting Mot. to Dismiss, ECF No. 15.)

In December of 2018, Plaintiff filed an amended complaint. (Am. Compl., ECF No. 18.) According to the Amended Complaint, Defendant "represented that the System would produce a minimum of just over 7,000 kW [kilowatts] per year." (*Id.* ¶ 40.) Shortly after the installation, the system began to malfunction and did not produce the represented minimum 7,000 kW per year. (*Id.* ¶¶ 39-43.) Plaintiff alleges that the System malfunctioned "almost immediately" after the installation and failed to produce the minimum amount of power in the beginning of 2008 and has only produced the promised amount of power in two out of ten years. (*Id.*) Plaintiff alleges that Defendant was aware that it was giving false information about the power generated annually, that Plaintiff reasonably relied on those misrepresentations, and that Defendant knew Plaintiff would rely on those misrepresentations when he spent $57,728 to install the System. (*Id.* ¶¶ 32, 120-25.)

Plaintiff avers that GeoGenix acted as Defendant's agent and that Defendant controlled the manner and materials used for installation. (*Id.* ¶¶ 15-19.) Plaintiff bases his agency argument on statements from former GeoGenix owner Mitch Berman to contend that GeoGenix operated under the control and authority of Defendant. (*Id.* ¶¶ 7-22.)

The Amended Complaint pleads that GeoGenix was an "Elite Dealer" of Defendant's System, which was not sold to the public, but through distributors. (*Id.* ¶¶ 9, 21.) To become an Elite Dealer, Defendant required that its products account for more than 50% of GeoGenix's sales and required GeoGenix to "plead [its] case" for becoming an Elite Dealer. (*Id.* ¶¶ 10, 12.) The Amended Complaint also alleges GeoGenix was required to undergo mandatory training and submit its financials to Defendant. (*Id.* ¶¶ 11-12.) Defendant would also perform "audits" on the installation process and could compel GeoGenix to make changes or require use of certain

2

materials, such as specific fasteners or flashings in the installation. (*Id.* ¶¶ 15-19.) Defendant could also compel GeoGenix to redo an installation if it had any "concern about the installation performed" or "found a purported defect." (*Id.* ¶ 16.)

Plaintiff also pleads that through its warranty, Defendant made certain promises that the System would produce at least 90% of the "Minimum Peak Power" (the 7,000 kW represented by Defendant)[2] for twelve years and at least 80% of the "Minimum Peak Power" for twenty-five years after the installation. (*See Id.* ¶ 2, Ex. B ("Warranty"), ECF No. 18-2.) Plaintiff requested that Defendant either replace or repair the System pursuant to the Warranty that Defendant provided at the time the Contract was formed, and that those requests were "consistently and repeatedly ignored . . . ." (*Id.* ¶¶ 50-51, 56.) Plaintiff concedes that Defendant eventually attempted to repair the System but "the repair was either ineffective, or the System shortly began to function sub-optimally again." (*Id.* ¶¶ 58-60.) Plaintiff alleges "Defendant failed to properly repair, replace, or compensate Plaintiff for the defective System[,]" thus, given Defendant's inability to repair or replace the System, he "never had a consistently functional System." (*Id.* ¶¶ 103, 106.) Since he never had a functioning System, Plaintiff alleges Defendant did not act in good faith by "taking monies from Plaintiff yet furnishing a constantly malfunctioning System[,]" as well as "ignoring Plaintiff's warranty demands . . . ." (*Id.* ¶¶ 110, 113.)

In addition to the $57,728 paid for installation, Plaintiff also claims the malfunctioning System caused him to lose potential compensation under the New Jersey Solar Renewable Energy Certificate Program (the "SREC"). (*Id.* ¶¶ 32, 45; *see also* Contract 1, 4.) The SREC provides

---

[2] Plaintiff alleges in his Amended Complaint that the represented minimum power produced would be about 7,000 kW per year. (Am. Compl. ¶ 40.) Neither the Warranty nor the Contract state a specific amount. (*See generally* Contract; Am. Compl., Ex. B ("Warranty"), ECF No. 18-2.) The Warranty merely refers to "Minimum Peak Power" but gives no numerical amount. (Warranty ¶ 2.)

compensation for "energy produced via solar systems" without which "Plaintiff would not have purchased a solar system." (*Id.* ¶¶ 45, 47.) Due to the malfunctioning System, Plaintiff was unable to produce an estimated 32 SREC credits worth of energy, forcing Plaintiff to forego compensation under the SREC Program (*Id.* ¶¶ 48-49.) Plaintiff brings the following individual claims: (1) Breach of Contract; (2) Breach of Warranty; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Unjust Enrichment; and (5) Common Law Fraud. (*Id.* ¶¶ 86-126.)

## II.  **Legal Standard**

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court must conduct a three-part analysis when considering a Rule[3] 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

---

[3] All references to a Rule or Rules refer to the Federal Rules of Civil Procedure.

4

III.    **Discussion**

In his Amended Complaint, Plaintiff attached the original Contract, which was signed by Plaintiff on March 9, 2006. (*See* Contract 1, 4.) The Amended Complaint also alleges that Defendant "represented that the System would produce a minimum of just over 7,000 kW per year." (Am. Compl. ¶ 40.) Plaintiff alleges that "[a]lmost immediately after the System was installed, it began to malfunction" and "fail[ed] to produce the requisite minimum power output on a yearly basis." (*Id.* ¶ 39.) Plaintiff specifically notes that the System failed to produce the minimum 7,000 kW from 2008 to 2017, except for 2013. (*See id.* ¶¶ 41-42.)

Defendant asserts that Plaintiff insufficiently pled facts to establish an agency relationship between Defendant and GeoGenix. (Def.'s Moving Br. 11-14, ECF No. 21-1.) Defendant argues, "Plaintiff does not allege any agreement between [Defendant] or GeoGenix or, more importantly, any indication that GeoGenix believed itself to be [Defendant]'s agent in 2006." (*Id.* at 15.) Defendant also argues that the "Warranty produced by Plaintiff clearly states that [the Warranty] was printed last year and . . . is a version that was 'Revised' more than nine months after . . . Plaintiff entered into the GeoGenix Contract." (*Id.* at 27-28.) Defendant, however, does not provide the original warranty nor state how the two are different. Defendant also argues that "[b]y making such repairs and 'provid[ing] certain replacements to Plaintiff's System,' [Defendant] fulfilled its obligations under the plain language of the [Defendant's] Warranty." (*Id.* at 28.)

Regarding the two putative class action claims, Defendant argues Plaintiff does not meet the heightened pleading requirement under Rule 9(b) and "does not specify any allegedly actionable statements made by" Defendant. (*Id.* at 20, 22.) Defendant argues it did not act in bad faith since it "act[ed] in accordance with an express contractual term" and that "the Amended Complaint does not allege that [Defendant] acted with a bad motive in relation to [Defendant's]

5

Warranty." (*Id.* at 29-30.) Defendant also argues that all Plaintiff's claims are time-barred by the appropriate statute of limitations. (*See generally id.*)

Plaintiff avers that he timely initiated this action, and therefore the statute of limitations does not bar his claims, due to the continuing tort doctrine. (Pl.'s Opp'n Br. 25.)[4] Namely, Plaintiff states that "the continuing nature of Defendant's wrongful conduct which . . . extended through 2017 and 2018—operates to toll the statute of limitations." (*Id.* at 26.)[5]

### A.    Plaintiff has Pled Sufficient Facts Regarding an Agency Relationship

Plaintiff's breach of contract claim relies on the existence of an agency relationship between Defendant and GeoGenix. "An agency relationship is created when one party consents

---

[4] Plaintiff argues, for all his claims, that pursuant to Federal Rule of Civil Procedure 8(a), he has pled facts of a "sufficient factual matter 'to state a claim to relief that is plausible on its face.'" (Pl.'s Opp'n Br. 3 (quoting *Twombly*, 550 U.S. at 570).)

[5] The present matter is a construction-defect action, where the six-year statute of limitations does not begin until the breach should have been discovered through reasonable diligence. *See The Palisades at Fort Lee Condominium Ass'n, Inc. v. 100 Old Palisade, LLC*, 169 A.3d 473, 477-78 (N.J. 2017). It is unclear when Plaintiff should have reasonably discovered the System's defect because one could argue reasonable discovery was: (1) when the System was installed and "almost immediately" began to malfunction; (2) in 2008 when the System first failed to produce the represented minimum electrical power of 7,000 kW; or (3) at some later time, after repeated years of underproduction. The Court, therefore, declines to dismiss Plaintiff's claims based on statute of limitations grounds, and finds this issue better resolved at summary judgment. *See id.* at 489; *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002); *see also Jacoby v. AXA Equitable Life Ins. Co.*, No. 13-6511, 2014 WL 7058224, at *18 (E.D. Pa. Dec. 15, 2014).

The statute of limitations applied to Plaintiff's breach of warranty claims is four-years. N.J.S.A. 12A:2-725; *see also Docteroff v. Barra Corp. of Am.*, 659 A.2d 948, 952 (N.J. Super. Ct. App. Div. 1995). Here, Defendant's warranty is one of future performance and the statute of limitations does not begin until the breach of that guarantee of future performance should have been reasonably discovered. *See Docteroff*, 659 A.2d at 954 ("[W]hen breach of an express warranty of 'future performance' is involved, 'the four-year limitations period does not begin to run until the breach.'"); *In re Catepillar Inc., C13 and C15 Engine Prod. Liab. Litig.*, 2015 WL 4591236, at *24 (D.N.J. July 29, 2015); *Comm'r of Fire Dist. No. 9 v. Am. La Fr.*, 424 A.2d 441, 445 (N.J. Super Ct. App. Div. 1980). Plaintiff's warranty claim faces the same question as his breach of contract claim, *i.e.* it is unclear as to when Plaintiff should have reasonably discovered the breach of warranty, and therefore, the Court defers deciding on the statute of limitations issue until summary judgment.

to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993). In determining control and direction by the principal, the court looks at "specific role[s] and functions undertaken [by the alleged agent] and the extent to which those activities were authorized." *Id.* at 80.

Plaintiff alleges that an agency relationship based on actual authority existed between Defendant and GeoGenix, whereas Defendant was the principal and GeoGenix was its agent. As such, Plaintiff must plead facts in support of its allegation that Defendant controlled and directed the acts of GeoGenix. Defendant argues that "Plaintiff does not allege any agreement between [Defendant] or GeoGenix" or "that there was an agency relationship at the time of taking action that has legal consequences for the principal." (Def.'s Moving Br. at 16 (internal quotations and citations omitted)).

The Court finds Defendant's arguments unpersuasive. First, contrary to Defendant's argument, an actual agreement is not required to plead an agency relationship. "There need not be an agreement between parties specifying an agency relationship; rather, 'the law will look at their conduct and not to their intent or their words as between themselves but to their factual relation.'" *Sears Mortg. Corp.*, 634 A.2d at 79 (quoting *Henningsen v. Bloomfield Motors*, 161 A.2d 69, 78 (N.J. 1960)). Second, to plead actual authority, one merely needs to allege, "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010) (quoting *Restatement (Third) of Agency* § 2.01).

In his Amended Complaint, Plaintiff relies upon statements from former GeoGenix owner Mitch Berman to demonstrate that Defendant exercised direct control over GeoGenix. (Am. Compl. ¶¶ 7-22.) Specifically, Berman states GeoGenix was an "authorized dealer" for Defendant

and, at some point, became an "Elite Dealer" of Defendant's products. (*Id.* ¶¶ 7, 9.) To become an Elite Dealer, "Defendant required GeoGenix to undergo mandatory and ongoing training which included GeoGenix representatives traveling to Defendant and conferences hosted by Defendant, online training, and Defendant's representatives going to GeoGenix in person for training." (*Id.* ¶ 11.) Berman also claimed, "that in order for GeoGenix to maintain its Elite Dealer status, Defendant required more than 50% of GeoGenix's sales to be for Defendant's solar power systems" and to become an Elite Dealer, "GeoGenix was required to submit financials to Defendant and then plead [its] case for why [GeoGenix] should be afforded the dealer status." (*Id.* ¶ 10, 12 (internal quotations omitted)). The alleged required roles and control of GeoGenix by Defendant allow for a plausible agency relationship.

According to Berman, Defendant also "controlled the method of GeoGenix's installation of [Defendant's] systems" (*Id.* ¶ 17), requiring that GeoGenix use certain types of materials, such as specific fasteners and flashing, for its installation of the System (*Id.* ¶¶ 18-19). Berman also claims that Defendant would perform "audits" on GeoGenix's installations. (*Id.* ¶ 15.) If Defendant had any "concern about the installation performed by GeoGenix or found a purported defect in the installation following an inspection, Defendant had the authority to compel GeoGenix to either alter some condition of the installation or redo the entire installation." (*Id.* ¶ 16.)

Given the allegations above, the Court finds that at this motion to dismiss stage, Plaintiff has pled sufficient facts demonstrating the plausibility of an agency relationship between Defendant and GeoGenix.[6] *See Lutsky v. Monmouth Marine Engines, Inc.*, No 12-7554, 2014 WL 575459, at *4 (D.N.J. Feb. 11, 2014) (finding that alleging agent was an authorized

---

[6] Defendant also argues that Plaintiff has not pled sufficient facts for an agency relationship based on apparent authority. (Def.'s Moving Br. 18-22.) Since the Court has found that Plaintiff has sufficiently pled a plausible agency relationship on actual authority, it need not address Defendant's apparent authority arguments.

dealer and repair service of defendant's products led to a sufficient pleading of agency); *Conn. Gen. Life Ins. v. Roseland Ambulatory Surgery Ctr.*, No. 12-05941, 2014 WL 2601972, at *5 (D.N.J. June 11, 2014) (finding adequate pleading of agency where plaintiff sufficiently alleges a breach of contract claim and that breaching party was the defendant's agent). The Court, therefore, denies Defendant's motion to dismiss Plaintiff's breach of contract claims.

## B. Plaintiff Sufficiently Pled That Defendant did not Meet its Warranty Obligations

Plaintiff brings a breach of warranty claim because the System failed to produce the promised minimum amount of power and Plaintiff has "never had a consistently functional System." (Am. Compl. ¶¶ 99-107.) Defendant moves to dismiss Plaintiff's breach of warranty claim, arguing the Warranty obligations were met when Defendant attempted to fix the System. (Def.'s Moving Br. 27-29.) When determining if a repair or replacement meets the obligations of a warranty, "courts generally have concluded that so long as the buyer has the use of substantially defect-free goods, the limited remedy should be given effect. But when the seller is either unwilling or unable to conform the goods to the contract, the remedy does not suffice." *Chatlos Sys. Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1085 (3d Cir. 1980).

Plaintiff alleges the System's malfunctioning and Defendant's subsequent inability to get the System to produce the represented power output deprived Plaintiff of the substantial value of his bargain, namely the expected compensation for the SREC credits. Plaintiff alleges that despite Defendant's repeated attempts to repair the System, the represented minimum power of 7,000 kW was only produced two out of ten years. (Am. Compl. ¶¶ 40-41.) Plaintiff also alleges he "would not have purchased a solar power system but for the benefits conferred under the [SREC]." (*Id.* ¶ 45.) Due to the System's continued malfunctioning, Plaintiff was deprived of compensation to produce electrical power under the SREC program. (*Id.* ¶ 46.)

Plaintiff has sufficiently pled that his expectation was the System would produce the represented minimum yearly power of 7,000 kW and that he relied upon that expectation. (*Id.* ¶ 40.) Despite Defendant's numerous attempts to repair or replace the System, it did not consistently produce the promised power. (*See id.* ¶¶ 56-64.) Thus, Plaintiff sufficiently pled that the System did not conform to the Contract, it failed its essential purpose, the correction remedy (repairs and replacement) were ineffective, and the warranty obligations were not met. *See Viking Yacht Co., Inc. v. Composite One LLC*, 385 F. App'x 195, 207-08 (3d Cir. 2010) (holding that a remedy fails its essential purpose when the plaintiff loses the substantial value of his or her bargain). Plaintiff has sufficiently pled a plausible claim for breach of warranty and Defendant's argument that it attempted to repair the System lacks persuasion.

## C.    Plaintiff Insufficiently Pled Required Bad Motive for Breach of Implied Covenant of Good Faith and Fair Dealing Claims

Defendant moves to dismiss Plaintiff's claims for breach of good faith and fair dealing. (Def.'s Moving Br. 29-32.) Plaintiff argues Defendant breached the implied covenant of good faith and fair dealing by "taking monies from Plaintiff yet furnish[ing] a constantly malfunctioning System" while "ignoring Plaintiff's warranty demands . . . ." (*Id.* ¶¶ 110, 113.) Defendant argues it cannot have breached the implied covenant of good faith and fair dealing when it "act[ed] in accordance with an express contractual term . . . ." (Def.'s Moving. Br. 29 (citing *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010).) Defendant also claims "the Amended Complaint does not allege that [Defendant] acted with a bad motive in relation to the [Defendant's] Warranty." (*Id.* at 30.)

"[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other part[ies] to receive the fruits of the contract; in other words, . . . there exists an implied covenant of good faith and fair dealing."

*Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (internal citation omitted). "To establish a breach of the covenant of good faith and fair dealing, a plaintiff must show that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, No. 14-4209, 2015 WL 1119475, at \*13 (D.N.J. Mar. 11, 2015). "[A] plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the breach of contract." *Mason v. Roman Catholic Archdiocese of Trenton*, No. 18-10733, 2019 WL 1320299, at \*8 (D.N.J. Mar. 22, 2019) (quoting *Elite Pers. Inc. v. PeopleLink, LLC*, No. 15-1173, 2015 WL 3409475, at \*3 (D.N.J. May 27, 2015)). In order to establish breach of good faith and fair dealing "[b]ad motive or intention is essential." *Wilson v. Amereda Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001) (internal citation omitted).

First, Defendant's argument that acting according to an express contractual term precludes a breach of implied covenant of good faith and fair dealing claim is without merit. *See Wilson*, 773 A.2d at 1126 (citing *Sons of Thunder*, 690 A.2d at 587) ("[A] party's performance under a contract may breach th[e] implied covenant [of good faith and fair dealing] even though that performance does not violate a pertinent express term"). Second, in pleading bad motive, Plaintiff is not required to specifically use or plead "bad motive" or "bad intentions," Plaintiff need only plead that Defendant has acted "arbitrarily, unreasonably, or capriciously." *See Lukoil N. Am. LLC v. Turnersville Petroleum Inc.*, No. 14-3810, 2015 WL 1735369, at \*8 (D.N.J. Apr. 16, 2015); *see also Slack v. Suburban Propane Ptrs., LP*, No. 10-2548, 2010 WL 5392845, at \*11 (D.N.J. Dec. 22, 2010).

Here, Plaintiff alleges that he "made a multitude of requests under the Warranty for Defendant to repair or replace the defective System . . ." which were "consistently and repeatedly

11

ignored . . . ." (Am. Compl. ¶¶ 56-57.) Plaintiff alleges that when Defendant did attempt to repair the System, "the repair was either ineffective, or the System shortly began to function sub-optimally again." (*Id.* ¶ 59.) Nowhere in the Amended Complaint, however, does Plaintiff allege Defendant acted with bad motive, or that Defendant acted arbitrarily, capriciously, or unreasonably in regard to either the Contract or the Warranty. Plaintiff makes no such allegations of unreasonableness regarding his contract claims. (*See generally id.*) For the Warranty, Plaintiff only alleges that Defendant ignored requests to repair or replace the System and Defendant did in fact repair and replace the System. (*Id.* ¶¶ 57-58, 63.)

Plaintiff has not alleged any arbitrarily unreasonable or bad intention on the part of Defendant; therefore, the Court dismisses, without prejudice, the breach of good faith and fair dealing claims. *See JOC, Inc. v. ExxonmobilOil Corp.*, No. 08-5334, 2010 WL 1380750, at *6 (D.N.J. Apr. 1, 2010); *see also Pagan v. United Recovery Sys., Inc.*, No. 11-5992, 2011 WL 6098001, at *2 (D.N.J. Dec. 6, 2011).

### D. Plaintiff may Plead Unjust Enrichment as an Alternative to the Breach of Contract Claim[7]

"The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Assocs. Commercial Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986). To establish an unjust enrichment claim, a plaintiff must show "that [he or she] expected remuneration from the defendant at the time [he or she] performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d

---

[7] Plaintiff only alleges that "[i]t is unjust to permit Defendant to continue to retain benefits of the amounts paid by Plaintiff." (Am. Compl. ¶ 118.) The only amount Plaintiff alleges paying is $57,728 for installation of the System under the Contract. (*Id.* ¶ 32.) Thus, the Court will only consider an unjust enrichment claim pursuant to the Contract.

519, 526 (N.J. 1994). "[P]leading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy . . . ." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014).

Defendant moves to dismiss the unjust enrichment claim arguing "[Defendant] has no direct relationship with Plaintiff" via the Contract or an agency relationship. (Def.'s Moving Br. 32.) Alternatively, Defendant argues "unjust enrichment claims must be dismissed where an express agreement exists." (*Id.*) Plaintiff argues he sufficiently pled an agency relationship and "that Defendant received a direct benefit through the purchase of the System." (Pl.'s Opp'n Br. 18.) Plaintiff also argues he has sufficiently pled the following unjust enrichment elements: "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." (*Id.* at 18-19 (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)).)

The Court has already found that Plaintiff sufficiently pled an agency relationship. Defendant, however, disputes the Contract as inapplicable to it since only GeoGenix and Plaintiff were parties to the Contract. Plaintiff, therefore, may plead unjust enrichment as an alternative claim. *Grudkowski*, 556 F. App'x at 170 n.8; *see also MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008); *USI Int'l v. Festo Didactic, Inc.*, No. 15-8451, 2016 WL 4487858, at *2 (D.N.J. Aug. 24, 2016) (finding that parties may "plead claims in the alternative and specifically, to plead claims for unjust enrichment as an alternative to claims for breach of contract").

The Court next addresses whether Plaintiff has sufficiently pled the elements of unjust enrichment. Plaintiff alleges he "paid Defendant or its agent the full price of $57,728.00 for installation of the System." (Am. Compl. ¶ 32.) Plaintiff attached the Contract to his Amended

Complaint, which shows an agreement in which Plaintiff would pay $57,728 for Defendant's "Modules" and "Inverters". (*See* Contract 1, 4.) Plaintiff also alleges that Defendant "accepted money from Plaintiff for the System" and "Plaintiff was without reasonable power throughout most of the System's life." (Am. Compl. ¶¶ 116-17.) Defendant allegedly received a benefit from Plaintiff, $57,728 in compensation. (Contract 4.) Per Plaintiff's pleading, Defendant did not furnish its promised benefit, a properly functioning System. (Am. Compl. ¶¶ 39-42, 117.) The Court, accordingly, finds that Plaintiff sufficiently pled that Defendant received a benefit at Plaintiff's expense, which would be unjust for Defendant to retain. *See Petrosino v. Ventrice*, No. A-0020-13T1, 2015 WL 13694300, at *9 (N.J. Super. Ct. App. Div. Aug. 27, 2015) (citing *Goldsmith v. Camden Cty. Surrogate's Office*, 975 A.2d 459, 462-63 (N.J. Super. Ct. App. Div. 2009). The Court, therefore, denies Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

### E. The Economic Loss Doctrine Precludes Plaintiff's Common-Law Fraud Claims

Defendant argues Plaintiff failed to allege that it made any statement or misrepresentation to support a common-law fraud claim. (Def.'s Moving Br. 35.) Defendant also argues the economic loss doctrine precludes Plaintiff from pleading a fraud claim. (*Id.* at 36.) Plaintiff opposes and argues that he pled "very specific misrepresentations" that are "more than sufficient to place Defendant on notice of the complained fraudulent conduct . . ." (Pl.'s Opp'n Br. 15-16.)

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002). The economic loss doctrine "has been applied not only in products liability cases, but also in actions arising out of contracts for services and mixed goods/services contracts, including construction contracts . . . ." *Capitalplus Equity, LLC*

*v. Prismatic Dev. Corp.*, No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008). To plead a common-law fraud claim in a contractual dispute, "the conduct that the plaintiff is complaining of in its tort claims [must be] extrinsic to the contract . . . ." *Id.*

The Court finds that the economic loss doctrine precludes Plaintiff from pleading common-law fraud. Here, Plaintiff alleges Defendant misrepresented information regarding the annual power generated by the System and the promised coverage under the Warranty. (*See* Am. Compl. ¶¶ 119-26.) Specifically, Plaintiff pled: (1) Defendant made misrepresentations "regarding . . . the System" and "the warranty coverage for the System . . ."; (2) "at all relevant times, Defendant was aware that the misrepresentations were false"; (3) Defendant had the "intent to induce Plaintiff to rely upon those misrepresentations; (4) "Plaintiff did so rely on the misrepresentations" and that reliance was "reasonable for Plaintiff"; and (5) in relying on the misrepresentations, Plaintiff was "caused to expend excessive amounts of money for the installation of [the] System." (*Id.* ¶¶ 120-25.)

Plaintiff, however, does not plead why or how these allegations are extrinsic to the contract; all elements of Plaintiff's pleading deal with promises contained within the Contract and the Warranty. Thus, Plaintiff has made no allegations that the fraud claim is "extrinsic to the underlying contract claim." *Capitalplus Equity*, 2008 WL 2783339, at *6; *see also Gleason v. Norwest Mort., Inc.*, 243 F.3d 130, 144 (3d Cir. 2001); *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000), *aff'd in part, rev'd in part on other grounds*, 253 F.3d 159 (3d Cir. 2001). The Court, therefore, dismisses Plaintiff's common-law fraud claims without prejudice.

### F.    Plaintiff Sufficiently Pled Violations of the CFA

The CFA "does not require that the consumer actually be misled or defrauded by a merchant; any violation is enough to create liability." *Czmyr v. Avalanche Heating & Air*

*Conditioning, Inc.*, No. DC-17106-09, 2011 WL 519871, at *5 (N.J. Super. Ct. App. Div. Feb. 16, 2011). "To violate the [CFA], a person must commit an "unlawful practice" as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994); *see also Theideman v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790 (N.J. 2005). Under the third category—regulatory violations—"intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." *Id.*

Plaintiff alleges Defendant violated express provisions of the CFA and its regulatory statute, the New Jersey Home Improvement Practice Act ("HIP") (N.J.A.C. 13:45A-16.2). Defendant, however, argues Plaintiff has not met the heightened pleading standard required by Rule 9(b) and that Plaintiff has not specified any conduct that could give rise to a New Jersey CFA violation. (Def.'s Moving Br. 20-21.)

### 1.    CFA Regulation Violations

Plaintiff alleges Defendant violated several provisions of the CFA statutes. (Am. Compl. ¶¶ 128-32.) Namely, Plaintiff alleges Defendant, in the Contract, did not include the required information regarding: (1) general liability insurance, in violation of N.J.S.A. 56:8-151(a); (2) notice that Plaintiff may cancel the Contract within three days under N.J.S.A. 56:8-151(b); and (3) the toll-free number to the New Jersey Department of Consumer Affairs, in violation of N.J.S.A. 56:8-144. (*Id.* ¶¶ 130-32.)

### 2.    Specificity in Pleading CFA Violations

To state a claim under the CFA, [the plaintiff] must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Francis E. Parker Mem. Home, Inc. v. Ga.-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013). "[The] CFA does not require proof that a consumer has actually

relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss." *Id.* (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086-87 (N.J. 2007)).

A plaintiff pleading a CFA claim must also meet the heightened pleading standard under Rule 9(b). Under Rule 9(b), a plaintiff alleging fraud "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotations omitted). To satisfy this standard, the plaintiff must plead or allege the "who", "what", "when", "where", and "how" of the events at issue. *See Hemy v. Perdue Farms Inc.*, No. 11-888, 2011 WL 6002463, at *13 (D.N.J. Nov. 30, 2011) ("[T]he plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.").

Plaintiff has sufficiently pled unlawful conduct by Defendant in alleging violations of the CFA regulations and the HIP Act. As for ascertainable loss, Plaintiff pled loss of money for installation in the amount of $57,728 and loss of compensation from the foregone SREC credits. (Am. Compl. ¶¶ 32, 46-49.) To allege causation, Plaintiff needs only to sufficiently plead his ascertainable loss was "a result of" the unlawful practice. N.J.S.A. 56:8-19 ("[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of [any] practice declared unlawful under this act . . . may bring an action . . ."). By sufficiently pleading an agency relationship between Defendant and GeoGenix regarding the Contract (*Id.* ¶¶ 6, 23), Defendant is allegedly liable for Plaintiff's loss in connection with the Contract. *See Pontrelli v. MonaVie, Inc.*, No. 13-4649, 2014 WL 4105417, at *4-5 (D.N.J. Aug. 19, 2014) (finding defendant vicariously liable for alleged misrepresentations made by distributor based on an agency relationship). As a

17

result of entering into the Contract, Plaintiff spent $57,728 for the installation of an allegedly faulty System.

Further, Plaintiff has pled his CFA claims with enough specificity to meet the heightened standard under Rule 9(b). Plaintiff sufficiently alleges the "who" by specifically identifying Defendant and its agent GeoGenix. (Am. Compl. ¶¶ 6, 23.) Plaintiff identifies the "what" and "when" components by specifically listing the System and Contract that are at issue during the period of 2006 through the present. (*Id.* ¶¶ 39-42; Contract 1.) Plaintiff sufficiently alleges the "where" component by attaching the Contract showing the missing statutory language required by the CFA. (*See generally* Contract.) Finally, Plaintiff demonstrates the "how" by identifying the required statutory information Defendant was required to include in its Contract under the CFA. (Am. Compl. ¶¶ 129-132.) *See Pontrelli*, 2014 WL 4105417, at \*5 (using an analogous method for finding sufficient pleading of a CFA violation). Plaintiff has sufficiently pled his CFA claim and satisfied the Rule 9(b) pleading standard.

### G. New Jersey TCCWNA

The TCCWNA provides that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes **any provision that violates any clearly established legal right of a consumer** or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15 (emphasis added). The "TCCWNA creates liability whenever a seller presents a consumer with a covered writing that 'contains terms contrary to any established state or federal right of the consumer.'" *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134 (3d Cir. 2014) (quoting *Shelton v. Restaurant.com*, 70 A.3d 544, 558 (N.J. 2013)). "The rights and responsibilities

to be enforced by TCCWNA are drawn from other legislation. One such piece of legislation is the CFA." *Id.* (citing *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2007), *aff'd*, 964 A.2d 741 (N.J. 2009) (holding a covered writing containing a provision that "violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA")).

Defendant argues that the TCCWNA does not apply because Defendant is not a party to the Contract. (Def.'s Moving Br. 24.) Plaintiff argues that his sufficiently pled CFA claim also gives rise to a sufficient pleading of the TCCWNA claim. (Pl.'s Opp'n Br. 20.)

The Court first addresses Plaintiff's TCCWNA claims related to the Contract. Defendant, via an agency relationship with GeoGenix, made a contract with Plaintiff for the purchase and installation of the System (*See* Contract); should Defendant's Contract violate a "clearly established" legal consumer right, Defendant may be liable for a violation of the TCCWNA. *See Bosland*, 933 A.2d at 949 (holding since the plaintiff sufficiently pled a CFA violation, her "allegations [were] therefore sufficient to establish a potential violation of the TCCWNA because a consumer contract that violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA"). Plaintiff sufficiently pled a CFA violation claim; he repeats those allegations for his TCCWNA claim regarding the Contract. (*Compare* Am. Compl. ¶¶ 129-32 *with* Am. Compl. ¶¶ 142-45.) Plaintiff's sufficiently pled CFA claim is enough to allege a violation of a "clearly established legal right", thus Plaintiff sufficiently pled a violation of the TCCWNA as well. *See Dugan v. TGI Fridays, Inc.*, 171 A.3d 620, 647 (N.J. 2017) (noting that a violation of the CFA, or another consumer protection statute, may provide basis for a TCCWNA claim); *Bosland*, 933 A.2d at 949. The Court, therefore, denies Defendant's motion to dismiss Plaintiff's contract-based TCCWNA.

The Court next addresses Plaintiff's TCCWNA claim for the Warranty. The TCCWNA allows for certain exceptions regarding warranties and the exclusionary language they may contain:

> No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void. No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that **this shall not apply to warranties.**

N.J.S.A. 56:12-16 (emphasis added).

Defendant argues that the TCCWNA does not apply to the Warranty since N.J.S.A. 56:12-16 provides an exemption for warranties. (Def.'s Moving Br. 24.) Plaintiff argues Defendant's Warranty contains "impermissible exclusionary language" (Pl.'s Opp'n Br. 20) under N.J.S.A. 56:12-15, which states that no seller may enter into any written contract or warranty "that violates any clearly established legal right of a consumer or responsibility of a seller . . . at the time the offer is made or the consumer contract [or warranty] is signed." (Am. Compl. ¶ 147.)

Plaintiff alleges that the exclusionary language in the Warranty "extends beyond mere warranty exclusions and instead seeks to impermissibly impose a limitation on damages . . . ." (Pl.'s Opp'n Br. 22.) Plaintiff alleges Defendant's damage limitation clause in its Warranty does not specify if such limitation is legal in New Jersey, thus there is impermissible exclusionary language in the Warranty. (*Id.*) That claim is governed by N.J.S.A. 56:12-16, not N.J.S.A. 56:12-15. The second sentence of N.J.S.A. 56:12-16 expressly exempts warranties from the additional requirement of "specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey." Thus, Plaintiff's claims of impermissible exclusionary language cannot be applied to Defendant's Warranty. *See Venditto v. Vivint, Inc*, No.

14-4357, 2015 WL 926203, at *11-12 (D.N.J. Mar. 2, 2015) (holding that language limiting damages in warranty fell outside the scope of the TCCWNA). Plaintiff's TCCWNA claim for the Warranty, therefore, is dismissed with prejudice.

## V.   Conclusion

For the reasons set forth above, it is hereby ordered that Defendant's Motion to Dismiss is granted in part and denied in part. The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 28, 2019